UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN SEATING COMPANY,

    Plaintiff,

-vs-

    Case No. 01-00578
    Hon: AVERN COHN

USSC GROUP, INC. and
CHRISTIAN HAMMARSKJOLD,

    Defendants.

_____/

**DECISION AND ORDERS DENYING DEFENDANTS' AND PLAINTIFF'S
MOTIONS FOR JUDGMENT AS A MATTER OF LAW
<u>AND MOTIONS FOR NEW TRIAL</u>**

**I.**

This is a patent case tried to a jury. Involved is U.S. Patent No. 5,888,038 (the '038 patent) covering a tie-down device for wheelchairs in a vehicle. The accused devices, VPRo I and VPRo II manufactured by defendant[1] are also tie-down devices. Defendant's VPRo I device was held prior to trial to literally infringe; that holding is not in issue. Defendant's VPRo II device was found by the jury not to infringe under the doctrine of equivalents (DOE). The jury also found that the '038 patent was not invalid, finding that the tie-down was not in public use one year before the patent was applied for, December 2, 1996. 35 USC §102(b). A copy of the verdict and the jury's answers to questions is

---

[1] Defendant Christian Hammarskjold is the chief executive officer of USSC Group, Inc., and its sole stockholder. He was accused in the complaint of contributing to the infringement; he was ignored as a party at trial. All references in this order are to USSC Group, Inc.

1

attached as Exhibit A.

The case has a long docket history beginning on September 7, 2001, the date the complaint was filed. In a decision reported at 91 F. App'x 669 (2004), the Federal Circuit:

- reversed a finding that the VPRo I did not literally infringe;

- affirmed a finding that the VPRo II did not literally infringe;

- remanded the case because of claim construction error to determine whether or not the VPRo I literally infringed and VPRo II infringed under the DOE.

On remand a prior judge in an opinion filed May 23, 2005:

- denied summary judgment to defendant on the claim that the '038 patent was invalid because of public use;

- granted summary judgment to plaintiff on the claim VPRo I literally infringed;

- left for trial the issues of public use and infringement by the VPRo II under the DOE.

As is typical in a patent case in which a jury is demanded, the parties continually attempted to abort trial by efforts at disposition by summary judgment, and now after trial are attempting to subvert the jury's decision by motions for judgment as a matter of law (JMOL) (FED. R. CIV. P. 50) or new trial (FED. R. CIV. P. 59).[2]

Plaintiff filed a motion for JMOL or new trial on the question of infringement under the DOE; defendant filed a motion for JMOL or new trial on the public use issue. After due consideration of the motions, both are DENIED.

**II.**

As to the finding that VPRo II does not infringe the '038 patent under the DOE, the evidence at trial was such that the jury could reasonably find as it did that the manner in

---

[2] The criteria for a JMOL and a new trial are well known and will not be discussed.

which the wheelchair is locked to the vehicle by the VPRo II is substantially different than that called for by the '038 patent. In other words, the difference is more than insubstantial.

There is no need for a lengthy discussion of the evidence at trial or to deal with the issue of prosecution estoppel. Preliminarily it is important to note that neither the jury instructions nor the verdict form, including the questions, are challenged by plaintiff.

The jury was told that the phrase "locked to said vehicle" meant:

> "Locked to said vehicle" in subparagraph b(ii) of the '038 patent claim requires the movable securing element to hold the strap housing fixed in position, so that its movement is impossible, by virtue of a mechanical connection to the vehicle. Because the securing element is "movable," the locking mechanism must also be capable of being unlocked, or disengaged.

And the jury was told that in applying the DOE:

> American Seating asserts that VPRo II infringes claim 1 of the '038 patent under the doctrine of equivalents. In order to prove infringement, American Seating must persuade you that VPRo II has every element of claim 1 either literally (i.e., exactly) or under the doctrine of equivalents.
>
> There is no dispute over the fact that VPRo II includes all of the elements of claim 1 literally except for the movable securing element recited in subparagraph (ii). The dispute regarding infringement centers on whether VPRo II has a movable securing element that is "locked to the vehicle" in a manner equivalent to the literal meaning of those words in the claim, which I will explain to you shortly.
>
> * * *
>
> In order to infringe claim 1 of the '038 patent, the VPRo II must include every element, or limitation, of the claim. If VPRo II omits even a single element recited in claim 1, then USSC has not infringed the claim.
>
> A claimed element may be present in the accused VPRo II in one of two ways: either literally (i.e., exactly) or under what is known as the doctrine of equivalents. A claimed element is

3

literally present if it exists in the VPRo II just as it is described in claim 1.

A claimed element is present in the VPRo II under the doctrine of equivalents if the differences between the claimed element and a comparable element of the VPRo II are not substantial.

One way to determine if a difference is substantial is to look at whether the comparable element in VPRo II performs substantially the same function as the exact claim limitation and whether it does so in substantially the same way, to achieve substantially the same result.

As I have already told you, all of the elements of claim 1 except the "locked to the vehicle" element are present. Therefore, you do not have to decide the question of literal infringement. What you have to decide is if the element "locked to the vehicle" is present under the doctrine of equivalents.

In applying the doctrine of equivalents, you must evaluate the evidence and determine whether there is any difference between the element of claim 1 "locked to said vehicle" (as I have interpreted it) and the corresponding element of VPRo II. If you find that there is a difference, you must assess the extent of the difference to determine if they are nevertheless equivalent.

The question of equivalence is to be determined using an objective test from the vantage point of a person of skill in the art to which the invention pertains. If the differences are not substantial, then the two elements are equivalent under the doctrine of equivalents.

As I have told you one test for evaluating the substantiality of the differences is known as the "function, way, result" test. Under this test, the difference between the "locked to the vehicle" element of claim 1, as interpreted by me, and the structural element contained in VPRo II is insubstantial if, when compared to this element in claim 1 the structural element in VPRo II performs substantially the same function in substantially the same way and obtains substantially the same result. In other words, if the two elements are substantially the same in terms of the function they perform, the way that they perform the function, and the results they achieve, then they are equivalent under the doctrine of equivalents.

The evidence at trial was undisputed that for the arm of the VPRo II to be locked in place there needs to be a biasing force, and that the way the biasing force is applied is different than that called for in the '038 patent.  In the '038 patent the biasing force is supplied by a spring, and in the VPRo II the biasing force is supplied by tension in a strap. That tension is a result of a belt running from the arm of the tie-down device to the wheelchair.

In particular, plaintiff's expert opined that a biasing force is essential.  In this case, the biasing force comes from the tension in the straps (Tr. January 25, 2006, at 85:2-3), and the expert went on to agree that the way the biasing force is created is by hooking a strap to the wheelchair and that is a different way of creating a biasing force than the way shown in the '038 patent (Tr. January 25, 2006, at 88:1-6).

In response, witnesses for the defendant explained in detail to the jury how locking occurred in the presence of the wheelchair.

Looking back it is puzzling that the DOE claim even went to trial.  Twice the Federal Circuit noted that the '038 patent is not infringed when the wheelchair is necessary for the tie-down device to be locked.  American Seating, 91 F. App'x at 674 ("We held that the claim in question excludes the locking mechanism in which the assembly is 'held in position by virtue of its connection to the wheelchair. . . .'") citing American Seating Co. v. Transportation Seating, Inc., 62 F. App'x 344, 350 (Fed. Cir. 2003)).

The jury also was told:

> Evidence of designing around can be considered during a determination of infringement under the doctrine of equivalents. The ability of the public successfully to design around is one of the important public benefits that justify awarding patents.

As to plaintiff's argument that its expert's opinion was uncontradicted and therefore the jury was obligated to accept it and find infringement under the DOE the jury was told:

> The rules of evidence ordinarily do not permit witnesses to testify as to opinion of [sic] conclusion. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience have become expert in some art, science, profession or calling, may state their opinions as to relevant and material matters in which they profess to be expert, and may also state the reasons for the opinion. The expert witness in this trial was:
>
> Dr. Charles Reinholtz
>
> You should consider his expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide his opinion is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of his opinion are not sound or if you feel that it is outweighed by other evidence, you may disregard his opinion entirely.
>
> I shall now discuss with you the law applicable to this case.

The jury had every right to reject the Reinholtz opinion that the difference between the biasing force called for by the '038 patent and the biasing force called for by the VPRo II are not substantially different.

To hold that defendant's effort to design around failed and that the VPRo II in its way of attaching to a wheelchair is equivalent to the way of Claim 1 of the '038 patent would stretch the DOE beyond reason. Plaintiff certainly is not entitled to a JMOL. Additionally, since the Court does not find fault with the jury's verdict, plaintiff is not entitled to a new trial.

**III.**

A.

Defendant in the late stages before trial made a strenuous effort to avoid putting to the jury the issue of public use. First, over a year after the remand from the Federal Circuit it filed a motion for summary judgment on the issue. The motion was denied on May 23, 2005, in a detailed decision by the judge to whom the case had been reassigned after remand from the Federal Circuit.

On October 25, 2005, a Case Management Order was entered setting trial for January 26, 2006, to be preceded by a final pretrial conference on January 5, 2006. The case was reassigned on December 16, 2005, to the undersigned judge. Defendant moved for reconsideration of the order denying summary judgment on the public use issue on January 5, 2006, the same day the Court held the scheduled status conference. The reconsideration motion papers essentially repeated the initial motion papers.

Defendant urged as grounds for reconsideration a case recently decided by the Federal Circuit: Invitrogen Corp. v. Biocrest Mfg., 424 F.3d 1374 (Fed. Cir. 2005), which it argued held that the totality of the circumstances test was no longer applicable when dealing with the issue of public use. Plaintiff responded by asserting that Invitrogen did not announce a new rule and that the decision denying summary judgment was consistent with Invitrogen's holding. The Court came to no conclusion, but effectively denied the motion by stating the issue should go to the jury.[3] Having now fully consider Invitrogen, the Court is satisfied plaintiff's view of the case is the correct one.

B.

The evidence at trial on the issue relating to the development invention of the '038

---

[3] Plaintiff, not to be outdone, filed a motion for summary judgment that the '038 patent was not invalid under 35 USC §102(b) on January 10, 2006.

7

patent prior to December 2, 1995, one year before the date the patent was applied for, went as follows:

Prior to July, 1994, James A. Ditch, a co-inventor conceived a new approach to a restraint system for a wheelchair in a bus, motivated by the need for such a system under the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. Ditch was in charge of maintenance for the Long Beach (California) Transit Authority.

In July, 1994, Ditch directed the Transit Authority body shop to construct a prototype to his design. Because of the limited facilities available to Ditch for construction of the prototype, he approached Fereiroun Razavi, a co-inventor, for assistance. Razavi's company had metal fabricating capability. Razavi used CL Machines, Inc. to fabricate some of the necessary parts.

By July, 1995, an improved prototype had been fabricated. In September, 1995, another prototype was fabricated. In December, 1995, a prototype was installed in an out-of-service Transit Authority bus.

Up to December, 1995, aside from Ditch and Razavi, the following persons had an opportunity to observe the prototype as it went through development: employees of Razavi's company and CL Machine, Inc. who worked on fabrication; draftsmen in Razavi's employ who assisted in the development of working drawings; Ditch's brother; a photographer; and, senior workers at the Transit Authority who examined the prototype in the out-of-service bus. While none of these persons had formal agreements to keep confidential what they saw, all of them knew that Ditch was developing a new form of a tie-down system for wheelchairs.

Ditch testified that he had an oral agreement with Razavi not to publicly disclose the

invention and that the Transit Authority personnel had an understanding as to the confidentiality of what they observed. Ditch testified that the prototype installed in the out-of-service bus was a concept. Ditch further testified that the commercial practicality of what he had invented did not become aware to him until he talked to a representative of plaintiff in 1996. During his efforts in 1994-1995, Ditch believed he was working out a solution to the problem the Transit Authority had in meeting its obligations to the disabled.

### C.

### 1.

The jury was instructed as follows:

> USSC challenges the validity of the '038 patent on the grounds that the invention was in public use more than one year before the filing date of the application. To prove the patent invalid, USSC must persuade you that it is highly probable that the invention was used by a person other than the inventor who was under no limitation, restriction or obligation of secrecy to the inventor.
>
> * * *
>
> An invention is disclosed to the public or in "public use" if it was disclosed to a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor.
>
> In this case you must assess the evidence presented to you and determine if USSC has shown by the highly probable standard of evidence that the invention defined by claim 1 of the '038 patent was disclosed to the public or in public use before December 2, 1995. If you find that the invention was not disclosed to the public or in public use before December 2, 1995, you must then find the '038 patent to be not invalid.

### 2.

The jury found that "USSC [did not show] that it [was] highly probable that the invention defined by Claim 1 of the '038 patent was disclosed to the public or for public use

before December 2, 1995." To come to this conclusion it also had to find that the persons who did see the prototypes, and particularly the prototype installed in the out-of-service bus, were under a limitation, restriction or obligation of secrecy to Ditch and Razavi.

There was nothing in the evidence to suggest otherwise. All of the persons who saw prototypes were either employees of manufacturing facilities engaged in designing or fabricating parts for them or Ditch's brother, or a photographer, or employees of the Transit Authority.

The circumstances described in the evidence are closely analogous to those described by the district court in Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261 (Fed. Cir. 1986), a case much discussed in the prior judge's decision denying defendant summary judgment on the public use issue. In Moleculon the Federal Circuit found against a claim of public use:

> While it is true that Nichols [the inventor] explained his puzzle to a few close colleagues who inquired about it and allowed Obermayer to in fact use it, the personal relationships and other surrounding circumstances were such that Nichols at all times retained control over its use as well as over the distribution of information concerning it. He never used the puzzle or permitted it used in a place or at a time when he did not have a legitimate expectation of privacy and of confidentiality. In these respects, I consider the exposure to Obermayer in Nichols' office no different than the exposure of Nichols' close friends in his home.
>
> ...Here also the relationship between the participants in the alleged uses evidences a retention of control by Nichols. None of those participants had any basis for inferring that the puzzle was being given over by Nichols for their free and unrestricted use. Holding the public use bar inapplicable in these circumstances will not remove anything from the public domain. Moreover, there is absolutely no evidence in this case of commercially motivated activity by Nichols during the relevant period. Accordingly, the underlying policy against

> extending the effective term of exclusivity is not offended by a finding that the Nichols invention was not in public use.

Moleculon, 793 F.2d at 1265-66 *citing* Moleculon Research Corp. v. CBS, Inc. 594 F.Supp. 1420, 1427 (D.Del. 1984 (internal citations omitted).

Defendant makes much of the fact that the evidence did not establish an agreement by the persons who saw the prototypes to keep confidential what they saw.  This is of no moment.  As stated in Bernhardt, LLC v. Collezione Europa USA, Inc., 386 F.2d 1371, 1379 (Fed. Cir. 2004), citing Moleculon, 793 F.2d at 1266:

> The presence or absence of a confidentiality agreement is not dispositive of the public use issue, but "is one factor to be considered in assessing all the evidence."

As with plaintiff's effort to override the jury's decision, defendant is certainly not entitled to a JMOL.  Additionally, since the Court is not in disagreement with the jury's verdict, defendant is not entitled to a new trial.

SO ORDERED.


Dated:  March 27, 2006                    s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 27, 2006, by electronic and/or ordinary mail.


                                          s/Julie Owens
                                          Case Manager
                                          (313) 234-5160

11